McCLAINE v ALGER

Docket No. 79638. Submitted July 9, 1985, at Grand Rapids.—Decided April 7, 1986. Leave to appeal applied for.

William McClaine injured his back in a truck accident. He was taken to Mercy Hospital, operated by Sisters of Mercy Health Corporation, for medical care and treatment. His back was x-rayed, and a radiologist at Mercy Hospital prepared a report stating that there was a "slight loss of vertical height anteriorally at D11, without buckling of the anterior cortex, and therefore, probably of no significance". McClaine was released from the hospital a week later, still in great pain, and completed a release form provided by Mercy Hospital requesting that his records be forwarded to Dr. George D. Alger at Alger's office address. Upon returning home, McClaine went to Grand Rapids Occupational Medicine, P.C. (GROM), of which Dr. Alger was a shareholder, for treatment. On his first visit to GROM, McClaine was attended to by Dr. John O. L. Jui, another GROM stockholder, who, relying on a telephonic x-ray report from Mercy Hospital stating that there was no fracture, took a history, made an examination, and diagnosed McClaine's problem as a strain of the lumbrosacral and paravertebral muscles and ligaments. Dr. Jui prescribed rest. Two weeks later, Dr. Jui prescribed gentle exercise. Approximately six weeks after that, Dr. Alger saw McClaine for the first time and ordered physical therapy. Two weeks later, Dr. Alger referred McClaine to an orthopedic surgeon, who had new x-rays taken. Two weeks after that, following a second request for the x-rays taken at Mercy Hospital, Dr. Alger received the x-rays and, upon examining them, thought the x-rays showed a fracture of a vertebra. He immediately informed McClaine of his belief. During the period of time which elapsed between the time the x-rays were taken at Mercy Hospital and the time the orthopedic surgeon had new x-rays taken, the compression of Mc-

REFERENCES

Am Jur 2d, Hospitals and Asylums §§ 8-11, 28.

Am Jur 2d, Trial §§ 489 et seq., 573-930.

See the annotations in the ALR3d/4th Quick Index under Hospitals; Standard of Care.

Claine's 12th vertebra increased from a 30% loss of height to a 60% loss of height. The surgeon opined that a brace could have prevented the additional loss of height and its attendant disability. McClaine filed a medical malpractice action against George D. Alger, M.D.; Sisters of Mercy Health Corporation, also known as Mercy Hospital; Grand Rapids Occupational Medicine, P.C.; and John O. L. Jui, M.D., in Kent Circuit Court. The court, Stuart Hoffius, J., directed a verdict in favor of Sisters of Mercy Health Corporation at the conclusion of plaintiff's proofs. The jury returned verdicts of no cause of action against the remaining defendants. Plaintiff appealed. *Held:*

1. The trial court erred in directing a verdict in favor of Mercy Hospital. Plaintiff presented sufficient evidence of a causal connection between the hospital's negligence in failing to send the records or reports as originally requested and plaintiff's misdiagnosed injuries and misprescribed treatment to establish a jury question on the issue of proximate cause.

2. The trial court abused its discretion by excluding testimony from Dr. Jui concerning how his initial diagnosis and treatment of plaintiff would have differed had he had the x-rays taken at Mercy Hospital.

3. The trial court erred in failing to give properly requested, appropriate jury instructions as requested by plaintiff. The instructional error taints the jury's verdicts in a manner inconsistent with plaintiff's right to substantial justice; and, since the outcome but for that error is speculative, reversal is required as to the verdicts against both Doctors Alger and Jui. On retrial, the requested jury instructions should be given.

4. The trial court, from the record available for review, improperly admitted evidence of plaintiff's collateral source income. If defendants have additional evidence upon which collateral sources of income might arguably be admissible, they should offer that evidence upon remand. Plaintiff would then be free to offer rebuttal and the trial court should rule on the admissibility of collateral source income prior to trial.

Reversed and remanded for a new trial.

1. APPEAL — MOTIONS AND ORDERS — DIRECTED VERDICTS.

The Court of Appeals in reviewing a grant of a motion for a directed verdict in favor of a defendant must accord to the plaintiff the benefit of viewing the testimony and all legitimate inferences arising therefrom in a light most favorable to the plaintiff; if the evidence, when viewed in this manner, establishes a prima facie case, the grant of a directed verdict must be reversed.

2. HOSPITALS — STANDARD OF CARE — HOSPITAL STAFF — REASONABLE CARE.

The proper standard of care expected of a hospital staff toward hospital patients is such reasonable care and attention for their safety as their mental and physical condition may require.

3. MOTIONS AND ORDERS — DIRECTED VERDICTS — COURT RULES.

A party moving for a directed verdict must state specific grounds therefor (GCR 1963, 515.1).

4. NEGLIGENCE — LAPSE OF TIME.

A lapse of time from a tortfeasor's negligence to the time of injury will not protect the tortfeasor from liability.

5. EVIDENCE — RELEVANT EVIDENCE.

Questions of relevance are left to the discretion of the trial court.

6. EVIDENCE — RELEVANT EVIDENCE — RULES OF EVIDENCE.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence (MRE 401).

7. NEGLIGENCE — VICARIOUS LIABILITY.

Vicarious liability is based on principal-agent and master-servant relationships and involves the imputation of negligence of an agent or servant to the principal or master without regard to the fault of the principal or master.

8. TRIAL — JURY INSTRUCTIONS — APPEAL — COURT RULES.

The failure of a court to give accurate, applicable and properly requested standard jury instructions does not result in automatic reversal on appeal; a jury verdict should be vacated on such grounds only when the failure to do so would be inconsistent with substantial justice (MCR 2.516, 2.613).

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Angela J. Nicita*), for plaintiff.

*Allaben, Massie, Vander Weyden & Timmer* (by *Sam F. Massie, Jr.,* and *Brian D. Vincent*), for George D. Alger, M.D., John O. L. Jui, M.D., and Grand Rapids Occupational Medicine, P.C.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman*), for Sisters of Mercy Health Corporation.

Before: Wahls, P.J., and Allen and J. C. Ravitz,* JJ.

J. C. Ravitz, J. Plaintiff appeals as of right from judgments of no cause of action in favor of defendants Sisters of Mercy Health Corporation, also known and hereafter referred to as Mercy Hospital, Dr. Alger, Dr. Jui, and Grand Rapids Occupational Medicine, P.C. (GROM). The court directed a verdict for defendant Mercy Hospital at the conclusion of plaintiff's proofs. The jury verdict in favor of defendant doctors and GROM followed a six-day trial.

Plaintiff injured his back in the course of his employment when his tractor-trailer jackknifed near Cadillac, Michigan on January 7, 1980. He was taken to defendant Mercy Hospital. Plaintiff's back was x-rayed. An x-ray report prepared by a radiologist at Mercy Hospital stated that there was a "slight loss of vertical height anteriorally at D11, without buckling of the anterior cortex, and therefore, probably of no significance". When plaintiff was released from Mercy Hospital on January 15, 1980, still in great pain, he completed a release form provided by defendant Mercy Hospital requesting that his records be forwarded to defendant Alger at Alger's office address.

When plaintiff returned to his home near Grand Rapids, he visited GROM, of which defendants Jui and Alger were shareholders, for treatment. On January 21, 1980, the first date plaintiff visited GROM, a receptionist of GROM called Mercy Hospital for a verbal report of the x-rays. Her message, presented to Jui with plaintiff's charts, showed "no fracture". Jui took a history, made an examination, and diagnosed plaintiff's problem as

* Recorder's court judge, sitting on the Court of Appeals by assignment.

a "strain, * * * lumbrosacral and paravertebral muscles and ligaments". Jui prescribed rest. A copy of the actual x-ray report was requested, but never received. Jui examined plaintiff a second time on January 28, 1980. On February 4, 1980, Jui prescribed gentle exercise. Jui examined plaintiff on two subsequent occasions, February 13 and 26, 1980.

Alger saw plaintiff for the first time on March 17, 1980. On that date, following his examination, he checked for any new x-ray reports. He received a penciled note bearing, verbatim, the language of the x-ray report prepared at Mercy Hospital quoted above. Suspicious of the height loss, he immediately reexamined plaintiff but found no tenderness, deformity, or pain. On March 24, Alger ordered physical therapy. On April 7, concerned because of plaintiff's lack of progress, Alger referred plaintiff to an orthopedic surgeon, Dr. Ehlert. Sometime near April 7-9, 1980, plaintiff signed a release so that GROM could receive his x-rays and the x-ray report from Mercy Hospital. Those reports arrived at GROM, according to Alger, on April 19. Alger examined the x-rays on April 20. Alger thought they showed a fracture of a vertebra, and he immediately called plaintiff to inform him of this. Alger testified that the exercise program plaintiff had been on would have been contraindicated in the presence of a fresh compression fracture.

The x-rays revealed that defendant had suffered a "compression fracture" of a vertebra in his spine. Ehlert testified that comparison of the x-rays taken at Mercy Hospital in January with x-rays he ordered in April showed that the compression of the 12th vertebra increased from a 30% loss of height in January to a 60% loss of height in April. Ehlert opined that a Jewitt brace could

have prevented this additional loss of height and its attendant disability.

Plaintiff's complaint alleged that negligence on the part of defendants resulted in a deterioration from "an initial 20-30% compression fracture of the 12th thoracic vertebra to a current condition with a 60-70% fracture".

Plaintiff's complaint alleged that Mercy Hospital was negligent in failing to "provide medical records, x-rays and reports accumulated on plaintiff during his stay" to those providing plaintiff with subsequent medical care and treatment and in failing to "report or otherwise communicate the contents without misrepresentation of said medical records * * *", particularly the fact that plaintiff was suffering from a fracture of the spine.

Plaintiff's complaint alleged that Jui and Alger, and vicariously GROM, were negligent in failing to properly diagnose his condition, failing to order new x-rays, failing to review the initial x-rays, and negligent in prescribing the wrong treatment for his fractured spine.

### Plaintiff's claim against Mercy Hospital

The trial court directed a verdict on this claim at the conclusion of plaintiff's proofs after defendant Mercy Hospital argued that plaintiff had failed to show that its failure to send records or reports was a proximate cause of plaintiff's alleged worsened compression fracture. In reviewing this ruling, we must accord to plaintiff the benefit of viewing the testimony and all legitimate inferences arising therefrom in a light most favorable to plaintiff. If the evidence, when viewed in this manner, establishes a prima facie case, we must reverse. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975).

The proper standard of care expected of a hospital staff toward hospital patients is such reasonable care and attention for their safety as their mental and physical condition may require. See *Mounds Park Hospital v Von Eye*, 245 F2d 756, 759 (CA 8, 1957); *Sylvester v Northwestern Hospital of Minneapolis*, 236 Minn 384, 386; 53 NW2d 17, 19 (1952), cited in *Bivens v Detroit Osteopathic Hospital*, 77 Mich App 478, 487; 258 NW2d 527 (1977), *rev'd on other grounds* 403 Mich 820 (1978). We acknowledge that the causal link here is entirely circumstantial, but find that reasonable minds could differ on the factual question of whether Mercy Hospital's negligence was a proximate cause of plaintiff's damages.

Plaintiff was hospitalized at Mercy Hospital for eight days. He was still in great pain when released. He completed a records release form authorizing release of his records to Dr. Alger. Plaintiff saw Jui five times beginning January 21, 1980. Jui misdiagnosed and mistreated plaintiff's compression fracture, without the benefit of plaintiff's hospital records and x-rays. With no x-rays from Mercy Hospital, but only a handwritten note with a verbatim description from the Mercy Hospital radiologist's report, Alger also misdiagnosed and mistreated plaintiff. When Alger saw the x-rays, he immediately recognized a possible fracture. We believe that plaintiff presented sufficient evidence of a causal connection between Mercy Hospital's negligence and plaintiff's misdiagnosed injuries and misprescribed treatment to establish a jury question on the issue of proximate cause.

On appeal, defendant Mercy Hospital urges three grounds for sustaining the directed verdict which were not articulated below. A party moving for directed verdict must state specific grounds therefor. See GCR 1963, 515.1. Thus, we believe

appellate review is precluded on these three grounds. Our review of these grounds leads us to conclude that they lack merit at any rate. Mercy Hospital unsuccessfully seeks to shift to defendant doctors the duty to prevent harm to plaintiff. First, we believe that it was foreseeable that defendant physicians would wait for records rather than order new x-rays when a release was signed upon discharge and members of the GROM staff verbally requested plaintiff's records. We also decline to shift the duty to defendant doctors under the "learned intermediary" doctrine, heretofore applicable only to prescription drug products liability actions,[1] in this simple negligence claim. Finally, in Michigan, a lapse of time from a tortfeasor's negligence to the time of injury will not protect a wrongdoer from liability. *Parks v Starks,* 342 Mich 443, 446-447; 70 NW2d 805 (1955).

Although not dispositive of our reversal of the directed verdict against Mercy Hospital, to prevent further error on retrial, we address plaintiff's claim that the trial court improperly excluded testimony from Jui concerning how his diagnosis and treatment of plaintiff would have differed had he had the Mercy Hospital x-rays initially.

Jui testified by deposition. He was asked what his course of treatment would have been if plaintiff had come into his office on January 21, 1980, with the set of x-rays taken at Mercy Hospital. He responded that he would have ordered new x-rays, or would have shown the x-rays to a radiologist for a second opinion, or would have called an orthopedic consultation. Defense objections that the testimony would be speculative and that the response had no relevance to plaintiff's malpractice claim

---

[1] For a description of the evolution and rationale of this doctrine, see *In re Certified Questions,* 419 Mich 686, 704-718; 358 NW2d 873 (1984).

were sustained and the question and answer were stricken from the record.

Questions of relevance are left to the discretion of the trial court. *Birou v Thompson-Brown Co,* 67 Mich App 502; 241 NW2d 265, *lv den* 397 Mich 808 (1976). "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 401. We agree that the question and answer had no bearing on the standard of care exercised by Jui, since Jui did not in fact have the benefit of the x-rays on January 21, 1980. However, the question and answer went to the heart of plaintiff's claim against Mercy Hospital. It tends, in a very direct manner, to show that the hospital's negligence was at least a partial cause of plaintiff's present disability. To the extent that the question called for an opinion, Jui, as plaintiff's treating physician, was qualified by specialized knowledge to "assist the trier of fact to * * * determine a fact in issue". MRE 702. We find that exclusion of this evidence constituted an abuse of discretion. See *e.g., Abbott v Unemployment Compensation Comm,* 323 Mich 32; 34 NW2d 542 (1948).[2]

Defendant Mercy Hospital claims that there was no factual predicate for the opinion. We disagree. Jui examined plaintiff on January 21, 1980. The x-

---

[2] Denial of the admission of this testimony during plaintiff's proofs, which testimony was admitted as part of defendant Mercy Hospital's proofs, served to be doubly damaging to plaintiff at trial. The directed verdict was based on the trial court's reasoning that plaintiff had failed to show that Mercy Hospital's negligence was a proximate cause of his injuries. Admission of the testimony during the remaining defendants' proofs tended to shift the blame to defendant Mercy Hospital which had already been granted a directed verdict. This case is one in which the alleged negligence of one or several defendants is alleged to have proximately caused plaintiff's injuries. Admission of the disputed testimony on retrial will significantly aid the jury in apportioning the damages attributable to any negligent defendant.

rays were in existence and plaintiff had signed a release form to allow the records to be sent to GROM.

With regard to plaintiff's claim that the trial court improperly excluded testimony from Alger concerning what he would have done if he were the treating physician on January 21, we agree that the factual predicate is lacking. Jui, not Alger, was the treating physician on January 21.

Having determined that the directed verdict was improperly granted in favor of defendant Mercy Hospital, we next address plaintiff's appellate argument dealing with his malpractice actions against defendant physicians.

*Plaintiff's claims against defendants Jui and Alger*

On appeal, plaintiff claims that the trial court's failure to give properly requested SJI2d 15.04, 41.02 and 41.03 requires reversal as to defendant physicians and GROM. These instructions go hand-in-hand.

SJI2d 15.04 provides:

"Causation by Multiple Defendants
"You may decide that the conduct of neither, one or both of the defendants was a proximate cause. If you decide that one of the defendants was negligent and that such negligence was a proximate cause of the occurrence, it is not a defense that the conduct of the other defendant also may have been a cause of the occurrence. Each defendant is entitled to separate consideration as to whether his conduct was a proximate cause of the occurrence."

SJI2d 41.02 and 41.03[3] provide that where more than one defendant is liable, the damages caused

---

[3] SJI2d 41.02 provides:
"Damages to Be Assessed Separately

by each defendant shall be separately determined, unless the jury is unable to determine the separate amount caused by each defendant, in which case their verdict shall be for the total damages.

The trial court denied the request for instructions, apparently on the reasoning that any negligence of defendants Jui and Alger was necessarily joint, each defendant being vicariously liable for the acts of the others. The court thus instructed the jury only as follows:

"Your verdict will be for the plaintiff if the defendants were negligent and such negligence was a proximate cause of the plaintiff's injuries and if there were damages. Your verdict will be for the defendants if the defendants were not professionally negligent or did not commit malpractice, or if the defendants were professionally negligent or did commit malpractice, but such professional negligence or malpractice was not a proximate cause of the plaintiff's injuries or damages, or if the plaintiff was not injured or damaged."

Contrary to the trial court's ruling, Jui and Alger were not vicariously liable for each other's acts. Vicarious liability is based upon principal-agent and master-servant relationships and in-

"If you find one of the defendants to be liable, you shall determine the amount of damages he caused and return a verdict in that amount. If you find more than one of the defendants to be liable, you shall return a separate verdict for the amount of damages you determine each defendant caused."

SJI2d 41.03 provides:

"Multiple Parties and Pleadings Where Jury May Not Be Able to Apportion Damages.

"However, if you find one or more of the defendants to be liable, and after careful consideration of the evidence you are unable to determine the separate amount of damage each defendant has caused, then you shall not divide the plaintiff's total damages [between/among] them, but your verdict shall be for the total damages against the one or more defendants whom you find to be liable.

"If you can determine the amount of damage caused solely by a defendant or defendants whom you find not liable, you shall not include those damages in the total amount."

volves the imputation of negligence of the agent or servant to the principal or master without regard to the fault of the principal or master. *Layton v Quinn,* 120 Mich App 708, 714; 328 NW2d 95 (1982). Here, no principal-agent or master-servant relationship existed between Alger and Jui. Nor were the physicians here necessarily jointly liable because each allegedly misdiagnosed and misprescribed treatment for plaintiff. *Naccarato v Grob,* 384 Mich 248, 255; 180 NW2d 788 (1970); *Rodgers v Canfield,* 272 Mich 562, 565; 262 NW 409 (1935).

Does this error require reversal? Failure of a court to give accurate, applicable and properly requested standard jury instructions does not result in automatic reversal on appeal; a jury verdict should be so vacated only when the failure to do so would be inconsistent with substantial justice. MCR 2.516, 2.613; *Johnson v Corbet,* 423 Mich 304; 377 NW2d 713 (1985). We must conclude that the instruction given did not adequately inform the jury that it could consider separately the causal connection between the conduct of each defendant and plaintiff's injuries. The jury could easily have concluded that, unless they found the conduct of both doctors to be a proximate cause, they had to find in favor of both doctors.

What might have been, had this instructional error not occurred, is strictly conjectural. The jury still might have found in favor of both doctors, individually; or, they might have found one doctor liable and not the other.

Insofar as we regard the proofs against Dr. Jui to have been stronger than those against Dr. Alger, who ultimately helped secure an accurate diagnosis and terminate the inappropriate treatment, we have considered the question of whether the error may have redounded to the benefit of Dr. Jui but not Dr. Alger and, therefore, whether we

ought to affirm as to the latter. However, such a decision requires a level of omniscience which we clearly lack. A jury, properly charged, might have concluded that Dr. Alger's active role from at least March 24 until April 20 made him liable.

Since the instructional error taints the verdicts in a manner inconsistent with plaintiff's right to substantial justice, and since we cannot speculate as to what the outcome would have been but for this error, reversal is required as to both Doctors Jui and Alger. On retrial, SJI2d 41.02 and 41.03 should likewise be given.

Finally, we address plaintiff's claim that the trial court improperly admitted evidence of plaintiff's collateral source income. From the record available for our review, plaintiff's motion *in limine* should be granted at the retrial. If defendants have additional evidence upon which collateral sources of income might arguably be admissible, then upon remand defendants should offer this evidence, plaintiff should be free to offer rebuttal, and the trial court should rule on the admissibility of collateral source income prior to trial.

Reversed and remanded for a new trial.