**In re the DETENTION OF Timothy HODGES.**

**State Of Iowa, Appellee,**

v.

**Timothy Hodges, Appellant.**

**No. 03–1494.**

Supreme Court of Iowa.

Nov. 19, 2004.

Mark Smith, First Assistant State Public Defender, and Greg Bal, Assistant Public Defender, for appellant.

Thomas J. Miller, Attorney General, and Cristen C. Odell–Douglass and Thomas H. Miller, Assistant Attorneys General, and Brent Symens, County Attorney, for appellee.

CADY, Justice.

In this appeal we consider whether civil commitment under Iowa Code chapter 229A (2003) violates due process under the United States and Iowa Constitutions when the condition underlying commitment is antisocial personality disorder. For the reasons we expressed in *In re Detention of Barnes*, 689 N.W.2d 455, 2004 WL 2634540 (Iowa 2004) (*Barnes II*), also filed today, we affirm the district court judgment.

## I. Background Facts and Proceedings

Timothy Hodges, who is now forty-three years old, has a long history of sex offending. After his father sexually molested him at age ten, Hodges began molesting his sister. Around the same time, he began peeping into the girls' locker room at school to watch girls undress and shower. He also peeped into the bathroom at home to "watch[ ] women or other girls us[e] the rest room." He soon began peeping through windows in various houses in his community and even "entered a few of the homes to rifle through the female occupant's underwear drawers." On one occasion, after mowing a woman's lawn, he "asked her if she could take her nightgown off for" him. Hodges was placed in the children's unit at Cherokee Mental Health Institute following the incident.

Hodges remained at Cherokee for two years. While there, he continued peeping into the girls' locker rooms and bathrooms. After he was released, he continued his voyeuristic activities until he was placed in a children's home at age fifteen. While there, Hodges testified he would pull down girls' bed covers to look at their naked bodies as they slept. He was later returned to the Cherokee Institute after threatening to kill himself.

After his release from Cherokee, Hodges was placed in the Boys and Girls Home in Sioux City until he was seventeen. While on passes from the home, Hodges began to engage in frotteurism.[1] He would randomly grab "women [in]appropriately on the streets of downtown Sioux City." He "was arrested and charged with 26 different counts, roughly" over a "two to three month period." While at the Boys and Girls Home, he would clandestinely watch the house counselors take showers and would take their underwear. As a result of these activities, Hodges was placed in the State Boys Training School until he was eighteen.

---

1. Hodges described "frotteurism" as follows: "I might notice their breasts or their butt and I might grab their breasts for sexual pleasure. Just to grab them. Not really to harm them. Just to grab them for my own gratification." The DSM–IV defines frotteurism as: "Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving touching and rubbing against a non-consenting person." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* § 302.89 (4th ed., text rev.2000).

After Hodges was released from the Training School, he continued his frotteurism in Creston. He was also convicted of trespassing for peeking under the restroom stalls at the Union County courthouse to watch women using the bathroom. Instead of serving jail time, Hodges went to the Clarinda Mental Health Institute for thirty days.

When Hodges was nineteen, he was charged with second-degree burglary for breaking into a girlfriend's house and shoving her mother against the wall. He was returned to Clarinda for six to eight months.

When Hodges was twenty-one, he served thirty days in jail for fondling a woman without her consent. Between the ages of twenty-one and twenty-four, he frequently took women's underwear from clotheslines and laundromats. He also molested his twelve-year-old cousin for two to three months during this time.

In 1984, Hodges raped a mentally challenged woman on the grounds of Cherokee. He was charged with sexual abuse, but pled guilty to the reduced charge of assault causing bodily harm. He served eighty-seven days in jail.

After his release from jail, Hodges moved to LeMars, where he was arrested for watching women use the restroom at a laundromat through a hole in the wall. He also "broke into a gas station . . . to steal a bunch of porno magazines." He was convicted of third-degree theft, and served eight months of a two-year sentence.

After Hodges was released from prison, he broke into a woman's house "[t]o feel or fondle her while she was asleep." He also broke into another woman's house for the same purpose on two occasions. He was arrested and charged with trespassing and four counts of second-degree burglary. He pled guilty to one count of second-

degree burglary and was sentenced to ten years in prison.

After Hodges was released from prison, he began a sexual relationship with a mentally challenged woman, and engaged in sexual intercourse with the woman in the presence of her four-year-old daughter. He then sexually molested the child. He was convicted of third-degree sexual abuse in 1998 and discharged his sentence in December 2002.

The State filed a petition seeking to have Hodges deemed a sexually violent predator and civilly committed under Iowa Code chapter 229A. The trial commenced on August 12, 2003, and the jury heard testimony about Hodges' history of sex offending and testimony from psychiatrists. On August 14, 2003, the jury concluded Hodges was a sexually violent predator under Iowa Code section 229A.2(11), and the district court ordered him committed to the Civil Commitment Unit for Sexual Offenders at Oakdale.

Hodges appeals. He claims that a civil commitment under chapter 229A based on a diagnosis of antisocial personality disorder violates due process under the United States and Iowa Constitutions.

## II. Preservation of Error

■ The State acknowledges Hodges preserved error to the extent that his claim involves statutory construction, but claims he failed to preserve error on the due process challenge. It claims the due process challenge was not preserved because Hodges did not specifically refer to the Due Process Clause in his motion for a directed verdict in district court.

■■ The general rule is "that an appellate court will not consider grounds for a motion for directed verdict which the movant did not place before the trial court." *Podraza v. City of Carter Lake,*

524 N.W.2d 198, 202 (Iowa 1994) (citing 75A Am.Jur.2d *Trial* § 931, at 502–03 (1991)). However, there is an exception to this rule. *Id.*

> [A]n appellate court will consider grounds not precisely raised in a motion for directed verdict where the record indicates the trial court, counsel, and both parties had no doubt what the grounds for the motion were and these grounds were obvious and discussed thoroughly in the court below.

*Id.* (citing 75A Am.Jur.2d *Trial* 931, at 503).

It is clear in this case that "the trial court, counsel, and both parties had no doubt [that] the grounds for the motion" were that civil commitment of Hodges would violate due process. *See id.* The record indicates that counsel for Hodges informed the district court that his argument was "[b]ased on the *Foucha v. Louisiana* as well as the *Kansas v. Crane,* United States Supreme court cases." Counsel for Hodges further indicated the cases were "summarized in the memorandum" provided to the court and that they held that "an antisocial personality disorder [was] not sufficient basis for civil commitment." *Foucha* and *Crane* are cases that address the requirements for civil commitment to satisfy due process. *See Kansas v. Crane,* 534 U.S. 407, 413, 122 S.Ct. 867, 870, 151 L.Ed.2d 856, 862–63 (2002) (holding "there must be proof of serious difficulty in controlling behavior ... sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in the ordinary case") (citations omitted); *Foucha v. Louisiana,* 504 U.S. 71, 83, 112 S.Ct. 1780, 1787, 118 L.Ed.2d 437, 450 (1992) (holding it violates due process for a state to indefinitely detain persons acquitted due to insanity when they are no longer mentally ill). Thus, the due process issue was properly preserved for appeal. *See Podraza,* 524 N.W.2d at 202.

## III.  Standard of Review

When violation of a constitutional right is claimed, the standard of review is de novo. *State v. Tague,* 676 N.W.2d 197, 201 (Iowa 2004) (citing *State v. Naujoks,* 637 N.W.2d 101, 106 (Iowa 2001)). "The court makes an 'independent evaluation of the totality of the circumstances as shown by the entire record.'" *Id.* (quoting *State v. Turner,* 630 N.W.2d 601, 606 (Iowa 2001)). "We give considerable deference to the trial court's findings regarding the credibility of the witnesses, but are not bound by them." *Id.* (citing *Turner,* 630 N.W.2d at 606; *State v. Liggins,* 524 N.W.2d 181, 186 (Iowa 1994)).

## IV.  Hodges' Commitment as a Sexual Predator.

In *Barnes II,* we rejected the same claim raised by Hodges in this case. 689 N.W.2d at 458. Although Hodges could not be committed solely because of his antisocial personality disorder, antisocial personality disorder can serve as the mental abnormality upon which commitment is based so long as all the elements of the statute are met. For the reasons expressed in *Barnes II,* we conclude the commitment did not violate Hodges' due process rights under the United States and Iowa Constitutions.

## V.  Conclusion.

We affirm the district court judgment.

**AFFIRMED.**