Carter CROOKHAM, Appellee,

v.

Peter RILEY and Tom Riley Law Firm, P.C., Appellants.

No. 96–1930.

Supreme Court of Iowa.

Sept. 23, 1998.

Rehearing Denied Nov. 9, 1998.

David J. Dutton, James R. Hellman, and Carolyn A. Rafferty of Dutton, Braun, Staack, Hellman & Iversen, P.L.C., Waterloo, for appellants.

William G. Nicholson of White & Johnson, P.C., Cedar Rapids, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

Attorney Peter Riley (Peter) and the Tom Riley Law Firm, P.C. (Riley law firm) (collectively Riley) appeal from a judgment entered upon a jury verdict awarding Carter Crookham (Carter) $161,000 in damages for legal malpractice, from the court's order setting aside a judgment entry upon a jury verdict awarding the Riley law firm $86,000 in damages for breach of a contingent fee contract, and from the court's denial of posttrial motions. We affirm.

## I. *Background Facts and Proceedings.*

In 1976 Carter invested $65,000 in Muscatine Lighting Manufacturing Co., later known as Musco Sports–Lighting, Inc., and as Musco, Inc. (Sports) and in exchange he received 635 shares of stock (approximately eleven percent of the outstanding shares) and a promissory note for $35,000. Joe Crookham (Joe) and Myron Gordin (Myron) owned or controlled two-thirds of the company's stock. Carter later acquired 5600 shares of Musco Mobile Lighting Corp. (Mobile) and 20,000 shares of Facilities Acceptance Co. (FAC), additional companies owned or controlled by Joe and Myron.

Between 1982 and 1986 Carter was the general manager of Structural Contractors, another company controlled by Joe and Myron. Joe observed that Carter's behavior was becoming a problem in 1985. He was aware Carter had lupus disease and this condition required he take strong dosages of steroids. Joe believed the treatment caused Carter to be very hyper and made it difficult for people to work around him. In April 1986, Joe, Myron, and others in the companies discussed what action should be taken. They agreed Carter must be fired and that they should offer to purchase his stock interests in the Musco companies for $390,000.

When advised that he was fired, Carter sought legal advice. At the suggestion of his son, Carter contacted the Riley law firm and conferred with Peter. Carter complained that Joe and Myron were unlawfully siphoning the profits from the companies in which he held a minority interest. At the initial meeting with Peter on November 5, Carter provided numerous Musco documents that were reviewed by Peter. The documents revealed Musco had entered into an "operating loan agreement" that provided salary, management fees, and other remunerations would not be paid to Joe or Myron until the borrower was operating profitably unless the agreement was modified by sixty percent of the lenders. The "operating loan agreement" also provided the company would not become a party to any merger until all sums borrowed under the agreement were paid in full unless individual lenders with a combined participation percentage greater than sixty

percent agreed in writing to a modification. Because Carter's minority sharehold interest could not block a modification, Peter suggested if there were other minority stockholders that Carter could align himself with they could perhaps block action by Joe and his companies. Carter suggested that John Coster (John) be contacted.

On November 20 Peter met with Carter and John in Carter's home. They discussed the mutual interest that each had as minority shareholders and lenders under the provisions of the operating loan agreement. Peter learned that John had established a Coster trust in 1975. This trust was suggested by Joe who was John's attorney at the time. Under the provisions of the trust Joe was appointed trustee and John, his wife, and their children were beneficiaries. The trust had invested in Musco Sports, Mobile, and GNL, corporations controlled by Joe and Myron, and the trust assets had been used as collateral for Musco bank loans.

After failing to get Musco's records informally, Peter filed a law action for Carter in the district court for Polk County, Iowa on December 10. This suit requested the production of Musco's records and the issuance of an injunction prohibiting the corporate officers from altering them. Musco then voluntarily provided the requested records for Peter's review.

On January 23, 1987, Peter prepared a contingent fee contract for legal services which was signed by Carter. A second contingent fee contract was signed by Carter on February 16. This contract provided for the employment of the Riley law firm to prosecute his claim and provided for a contingent fee of forty percent in the event of recovery, and a fee of fifty percent if the case went to trial and the verdict was appealed. The contract also provided the gross recovery would not include amounts recovered on promissory notes made by Musco payable to Carter.

On August 23, Musco companies held shareholder meetings to vote on resolutions to indemnify corporate officers for wrongdoing. Just prior to the meeting, Peter filed a lawsuit in the Iowa district court for Mahaska County for Carter and John against Joe,

Myron, and the Musco companies seeking compensatory and punitive damages for breach of contract, breach of fiduciary duties, and fraud. A demand for a jury trial was also filed. Peter attended the shareholder meetings and, though Carter and John voted against the resolutions, the resolutions were adopted. At these same meetings, the possibility of merging the various Musco companies into one new corporation was discussed. All but Carter and John voted to go forward with the merger proposal. In response to the demand for jury trial, Musco filed a motion to transfer the action to the equity docket. The court granted the motion on October 12 and then denied Riley's motion to set aside the order granting the transfer on November 16.

On December 10 Musco mailed notices of a special meeting of shareholders of each of the Musco companies to be held on December 30, 1997, to consider and act upon proposed merger plans. The notice stated certain members of the board of directors that controlled in excess of two-thirds of the outstanding shares of stock had indicated their intent to vote such shares in favor of approving the plan. Under the proposed merger plan Carter would be paid $257,668 for his shares of stock in Sports, Mobile, and FAC, and John would be paid $149,525 for his shares in Sports, Mobile, and GNL. Under the plan all of the promissory notes to Carter and John would be paid in full.

The merger package was received and reviewed by Peter. Included was a copy of Iowa Code sections 496A.77 and .78 (1987) stating the rights of shareholders to dissent from any plan of merger and the rights of dissenting shareholders to demand payment of the fair value of such shareholder's stock.

Neither Carter nor Peter attended the special meeting of the shareholders held on December 30. The merger was approved by the stockholders at the meeting. Peter was advised of the action taken by the shareholders. He signed Carter's name on a "demand by dissenting stockholder for market value of shares" and mailed it to Musco on January 11, 1988.

Attorneys representing Musco notified Carter that his notice was not given within the ten-day statutory period and therefore he was not entitled to seek the determination of the market value of his stock as permitted by the statute. When contacted by Carter's son, Peter assured him that all dissenters' rights were properly protected and that he had complied with every necessary requirement.

On January 15 the Mahaska County lawsuit was dismissed by Peter. On the same date he filed a complaint on behalf of Carter and John against Joe, Myron, and the Musco companies in the United States District Court for the Southern District of Iowa. This suit alleged violations of the Federal Securities Act, violations of fiduciary duties, breach of the operating loan agreement, and securities fraud. In response the defendants raised the statute of limitations as a defense. This defense challenged the allegation of the plaintiffs that the statute of limitations was tolled by the discovery rule. Although the Eighth Circuit Court of Appeals had applied the Iowa discovery rule to fraudulent misrepresentations in a claim involving federal securities law, other federal circuit courts had adopted statutes of limitations from provisions of the federal securities law which barred claims for acts done in the past regardless of when those claims were discovered.

In April 1988, Peter filed a lawsuit in the Iowa district court for Muscatine County on behalf of John, his wife, and the beneficiaries of the Coster trust against Joe, Myron, and the Iowa Trust and Savings Bank (bank) for breach of fiduciary duties by engaging in self-dealing, and for maladministration of the trust. This suit asked for both compensatory and punitive damages. Carter was not a party in this lawsuit.

The Coster trust case was tried in May 1989. The jury returned special verdicts for the plaintiffs on many, though not all, of the plaintiffs' theories of liability, and awarded damages of approximately $1,000,000. The trial court set aside the verdicts and ordered a new trial on certain claims. Peter appealed on behalf of the Coster trust; Joe, Myron, and the bank cross-appealed.

On January 10, 1990, while the federal case was pending and while the Coster trust case was on appeal to the Iowa Supreme Court, a meeting was held in Des Moines to discuss a possible settlement of Carter's, John's, and the Coster trust's claim against Joe and the Musco companies. Carter did not attend but his son, David, was present, as well as John and his wife. At this meeting, Carter was offered a structured settlement of his claim. Under the terms of the proposed settlement, Musco would pay Carter $3700 per month over a twenty-year period. David told Riley this was acceptable. John and the Coster trust were offered $450,000 in settlement of their claims. Peter testified that Coster wanted $800,000 at a minimum. No settlement of either case was accomplished.

Carter's physical health began a sharp deterioration following a stroke in the summer of 1990. In 1991 he suffered another more severe stroke which left him dependent upon twenty-four-hour care. Musco paid Carter in full on the promissory notes on October 28, 1991.

The lawsuit in federal court was awaiting guidance from the United States Supreme Court regarding whether state discovery rules would apply in federal securities fraud cases. In June 1991, the United States Supreme Court held the discovery rule did not apply in federal court on charges of securities fraud. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). As a result of this decision the federal suit was dismissed on July 15, 1991.

The Coster trust appeal was decided on April 17, 1991. *See Coster v. Crookham,* 468 N.W.2d 802, 811 (Iowa 1991). We resolved some of the issues on the basis of the special verdicts but remanded other issues for retrial. We remanded for determination of actual and punitive damages on the claim against Joe arising from the guarantee of trust assets. *Id.* We also remanded for retrial of the claims against Joe for breach of his fiduciary duty by self-dealing. *Id.* The district court set the case for retrial in January 1992.

Peter advised Carter's sons that Joe would be desperate to settle the claims and that Carter and his family could probably get even more than what they had been offered in January 1990. Peter also kept them aware of the negotiations he was conducting for John and the Coster trust.

On January 3, 1992, Peter requested that Carter give him authority to refile the fraud suit in the Iowa district court. Peter, as attorney for John and the Coster trust, settled all claims against Joe and Musco for $875,000 on January 10. Approximately one hour after settlement of the Coster claims, Peter received a phone message from Carter's son that they had resolved everything with Joe and Musco and that he should not refile the lawsuit.

Under the terms of the settlement, Carter received periodic payments totaling $346,350. Carter and his wife signed a written settlement agreement and release on January 24. On January 17, Carter had transferred to his four children his Musco stock, any amounts due him as a result of the Musco reorganization, and any claims he had against Musco. At the request of Musco a settlement agreement was also signed by the Crookham children.

Carter filed a petition at law against Peter, Tom Riley, and the Riley law firm on December 10, 1992. The Riley law firm filed a counterclaim to recover contingent attorney fees. The case was tried to a jury between September 9 and September 23, 1996.

The trial court instructed the jury that Carter must prove: (1) an attorney-client relationship existed between the parties; (2) the defendants were negligent in one or more of the following ways (a) failing to give proper written objection to the merger, (b) failing to make a timely demand for a fair value of stock, and (c) continuing to represent Carter when having a conflict of interest; (3) the negligence was a proximate cause of Carter's damage; and (4) the amount of damages. The court further instructed that if these propositions were proved, the jury was to consider the defense of comparative fault.

The court also instructed the jury that the Riley law firm must prove: (1) the parties were capable of contracting; (2) the existence of a contract; (3) the consideration; (4) the terms of the contract; (5) the Riley law

firm had done what the contract required; (6) Carter breached the contract; and (7) the amount of damages Carter has caused.

The jury returned a verdict for Carter on his negligence claim and for the Riley law firm on its counterclaim. The jury found Carter sustained damages of $230,000, that his fault was thirty percent, and that the defendants' fault was seventy percent. On September 23, the court entered judgment on the verdicts against the defendants for $161,000 plus interest and against Carter for $86,000 plus interest. Following the filing of posttrial motions, the court found there was an inconsistency and irrevocable conflict between the jury's verdict for Carter on his malpractice claim and the jury's verdict for the Riley law firm on its contingent fee contract claim. The court ordered the judgment on the counterclaim be set aside and entered a judgment for Carter on the counterclaim. Riley filed a timely notice of appeal.

On appeal Riley argues the court erred (1) in denying their motion to dismiss because Carter was not the real party in interest, (2) in denying their motion for directed verdict on the claim that they committed malpractice in failing to preserve Carter's dissenting shareholder's right to fair value, (3) in denying their motion for directed verdict on the claim they committed malpractice in representing Carter when having a conflict of interest, (4) in making such an accumulation of erroneous evidentiary and other rulings that their right to fair trial was denied, and (5) in granting Carter's motion to set aside the judgment on Riley law firm's counterclaim for attorney fees. We now address each issue raised on appeal.

## II. *Real Party in Interest.*

■ ■ Every action must be prosecuted in the name of the real party in interest. Iowa R. Civ. P. 2. Riley argues the Crookham children are the real parties in interest in this suit because Carter transferred his Musco stock to his children on January 17, 1992, before he signed the January 24 settlement agreement. Riley moved to dismiss at the

close of the plaintiff's evidence and renewed the motion after all evidence had been offered. Our standard of review is for the correction of errors at law. Iowa R.App. P. 4. Normally, a motion to dismiss is directed to the pleadings and therefore, facts outside the pleadings should not be considered. *Estate of Dyer v. Krug,* 533 N.W.2d 221, 223 (Iowa 1995). However, we have found it proper for the district court to consider extraneous facts where those facts arose after the petition was filed and were undisputed by the parties and when the issue raised in the motion to dismiss was the plaintiff's capacity to sue. *Id.*

This is an attorney malpractice suit. The transfer of Carter's Musco stock did not constitute a transfer or assignment of the malpractice claim against Riley. Carter's cause of action for legal malpractice accrued when the negligence of legal counsel caused loss or damage. Carter had a legal right to bring a malpractice action at that time. Carter's children have no malpractice claim against Riley; Carter is the real party in interest. We need not decide if a legal malpractice claim is assignable.[1]

## III. *Dissenting Shareholders' Rights to Fair Value.*

Any shareholder of a corporation has a right to dissent from any plan of merger or consolidation to which the corporation is a party. Iowa Code § 496A.77.

Any shareholder electing to exercise such right of dissent shall file with the corporation ... a written objection to such proposed corporation action. If such proposed corporate action be approved ... and such shareholder shall not have voted in favor thereof, such shareholder may, within ten days after the date on which the vote was taken ... make written demand on the corporation ... for payment of the fair value of such shareholder's shares.... Any shareholder failing to make demand within the ten-day period shall be bound

---

**1.** Based on public policy considerations it has been held that malpractice claims should not be held subject to assignment. *See Goodley v. Wank*

*& Wank, Inc.,* 62 Cal.App.3d 389, 397, 133 Cal. Rptr. 83 (Cal.Ct.App.1976).

by the terms of the proposed corporate action.

*Id.* § 496A.78.

Riley argues Carter's claim of negligence based on his failure to preserve Carter's judicial appraisal remedy under section 496A.78 should have been dismissed because there was insufficient evidence to submit the issues of proximate cause and damages. Riley does not challenge Carter's proof that Peter's failure to comply with the statutory requirements fell below the required standard of care. We review the court's denial of a motion for directed verdict or judgment notwithstanding the verdict for correction of errors at law. Iowa R.App. P. 4.

> We review the evidence in the same light as the district court and determine whether a fact question was generated. When reviewing the denial of a motion for a directed verdict or judgment notwithstanding the verdict we view the evidence in the light most favorable to the nonmoving party.

*Mensink v. American Grain,* 564 N.W.2d 376, 379 (Iowa 1997) (citations omitted). If there is substantial evidence to support the claim the motion should be denied. *Johnson v. Dodgen,* 451 N.W.2d 168, 171 (Iowa 1990). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Id.* "Even if the facts are undisputed, if reasonable minds could draw different inferences from the evidence, the case should be submitted to the jury." *Fiala v. Rains,* 519 N.W.2d 386, 387 (Iowa 1994).

### A. Proximate Cause.

■ Riley urges Carter failed to prove Peter's negligence was causally connected with his claimed damages. Because section 496A.78 is not the exclusive remedy for a shareholder who dissents from a proposed corporate merger, Riley claims Carter had a better or equally satisfactory alternative remedy. That remedy was an action for damages based on fraud and illegality. In spite of Riley's suggestion that the suit for these damages be refiled, Carter settled the claim without taking the recommended action.

■ Carter's burden of proving proximate cause in this legal malpractice action is the same as any other negligence action. *Blackhawk Bldg. Sys., Ltd. v. Law Firm of Aspelmeier, Fisch, Power, Warner & Engberg,* 428 N.W.2d 288, 290 (Iowa 1988). Negligence is actionable only if it is a proximate cause of injury. *Gerst v. Marshall,* 549 N.W.2d 810, 813 (Iowa 1996). The district court instructed the jury, "[t]he conduct of a party is a proximate cause of damage when it is a substantial factor in producing damage and when the damage would not have happened except for the conduct." *See Spaur v. Owens–Corning Fiberglas Corp.,* 510 N.W.2d 854, 858 (Iowa 1994) (citing 1 Iowa Civ. Jury Instructions 700.3 (1991)). It is well established the questions of negligence, contributory negligence, and proximate cause are generally for the jury and only in exceptional cases can they be decided as a matter of law. Iowa R.App. P. 14(f)(10).

When we review the evidence in this case in support of the claim, we find substantial evidence that Peter failed to properly perfect and preserve Carter's right to a judicial appraisal and that this negligence was a proximate cause of damage. Carter was damaged by the loss of his dissenter's rights under section 496A.78. The alternative action for damage based on fraud and illegality was a separate claim requiring different proof. *See Davis–Eisenhart Mktg. v. Baysden,* 539 N.W.2d 140, 143 (Iowa 1995).

### B. Damages.

■ Riley argues Carter failed to show the loss of his right to obtain a judicial appraisal for the fair value of his stock shares caused him actual damage. Riley urges Carter was required to show the amount he ultimately accepted for his stock was less than the fair value he would have been awarded under the statute.

■ A fundamental element of a malpractice action is proof of damages proximately caused by the negligence. *Whiteaker v. State,* 382 N.W.2d 112, 114 (Iowa 1986). When the alleged malpractice action rests upon the defendant lawyer's mishandling of a claim or lawsuit, proof of damages necessarily involves analysis of the value of that un-

derlying claim or cause of action. *Id.* The measure of injury to the client's claim or cause of action is the difference between what the client should have recovered but for the attorney's negligence, and what the client actually recovered. *Id.* at 114–15.

There is a distinction between proof that a party has suffered damages and proof regarding the amount of those damages. If the record is uncertain and speculative whether a party has sustained damages, the fact finder must deny recovery. *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 641 (Iowa 1996). But if the uncertainty is only in the amount of damages, a fact finder may allow recovery provided there is a reasonable basis in the evidence from which the fact finder could infer or approximate the damages. *Id.*

We find substantial evidence in the record to support a damage award based upon Peter's mishandling of Carter's dissenter's statutory rights. Carter settled his claim for less than $350,000. There was testimony that the value of his stock at the time of the merger ranged between $500,000 and $600,000. The jury assessment of $230,000 in damages was supported by substantial evidence.

### IV. *Lawyer Conflict of Interest.*

Expert testimony was received that an attorney has an obligation to advise multiple clients of their different interests and that if they understand the potential problem they can proceed with a single lawyer. If there is a limited amount of money available for settlement of two clients' claims, an actual conflict of interest arises. At that time an attorney would have an obligation to advise both clients to get independent lawyers for their advice. The lawyer cannot choose which client he will represent. Failure to advise both clients of the potential problem, or failure to withdraw when an actual conflict exists without full and complete disclosure and consent by all clients, violates the Iowa Code of Professional Responsibility for Lawyers.

Disciplinary rule 5–105 provides, in part:

DR 5–105

. . . .

(B) A lawyer shall decline proffered employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except as to the extent permitted under DR 5–105(D).

(C) A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the representation of another client, except to the extent permitted under DR 5–105(D).

(D) In the situations covered by DR 5–105(B) and (C), a lawyer may represent multiple clients if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each.

Violation of the disciplinary rules constitutes some evidence of negligence. *Ruden v. Jenk*, 543 N.W.2d 605, 611 (Iowa 1996). In a legal malpractice action, expert testimony upon the standard of care is usually required. *Kubik v. Burk*, 540 N.W.2d 60, 64 (Iowa App.1995).

Riley argues the conflict-of-interest claim should have been dismissed because there was insufficient evidence on the essential elements of proximate cause and damages. Again, Riley does not challenge the submission of the negligence issue.

In division III. A. and B. we generally discuss the elements of proximate cause and damages. We now discuss the application of these elements in review of the conflict-of-interest claim.

### A. Proximate Cause—Conflict of Interest.

There is substantial evidence that Carter was not advised that Peter's representation of him could conflict with Peter's representation of John and the Coster trust claims, and that when an actual conflict arose in the settlement negotiations in 1990, Peter

did not advise Carter of the actual conflict nor did Peter withdraw as counsel.

Riley argues Carter failed to show the January 1990 settlement of Carter's claim would have occurred but for the negligence of Peter in representing both parties. Riley urges Joe and Musco would not have settled the case even if each claimant had separate counsel. Riley also claims Carter's settlement for $346,350 in January 1992 was made upon the advice of Carter's sons not upon Peter's recommendation. Peter's recommendation was to refile the fraud lawsuit in the Iowa district court within 180 days after the dismissal of the federal suit.

We find substantial evidence in the record to support a finding that Peter's conflict of interest was a proximate cause of damage to Carter. There is evidence that Carter was offered a structured settlement whereby he would be paid $3700 per month for twenty years in January 1990 and that this offer was acceptable to him. Joe and Musco had arranged for bank financing of $1,250,000 and could go higher to settle the claims of Carter, John, and the Coster trust. There is evidence that Peter advised the Costers not to settle with Joe and Musco although there apparently was only $50,000 difference in the amount offered to Costers and the amount they were asking. There is substantial evidence that Peter's attention to the Coster trust claim and his indifference to Carter's claim at the settlement conference in 1990 was a proximate cause of loss of the settlement offer.

### B. Damages—Conflict of Interest.

 When a conflict of interest results in a lost settlement, the measure of damage is the difference between what the client would have received in settlement and what the client actually recovered. Here there is substantial evidence Carter was offered a structured settlement valued at $575,000 or between $500,000 and $600,000. He ultimately settled for $346,350. The jury's determination that Carter sustained damages of $230,000 is supported by substantial evidence.

### V. New Trial.

 A motion for new trial may be granted for any of ten enumerated causes, but only if they materially affect the aggravated parties' substantial rights. Iowa R. Civ. P. 244.

Our review of a denial of a motion for new trial depends upon the ground for new trial asserted and ruled upon by the court. If the motion and ruling are based on a discretionary ground, the trial court's decision is reversed on appeal for an abuse of discretion. However, if the motion for new trial and ruling are based on a claim that the trial court erred on an issue of law, then the trial court's decision stands or falls on the correctness of its ruling on the legal question. *Ladeburg v. Ray*, 508 N.W.2d 694, 696–97 (Iowa 1993) (citations omitted). An abuse of discretion is shown only where such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Carolan v. Hill*, 553 N.W.2d 882, 885 (Iowa 1996). It is appropriate to consider all erroneous rulings collectively when ruling upon a motion for new trial. *Greiner v. Hicks*, 231 Iowa 141, 144–45, 300 N.W. 727, 730 (1941).

### A. Expert Opinion.

Riley claims it was error to allow plaintiff's expert witnesses to testify on questions of law and mixed questions of law and fact. The court allowed the witnesses to express opinions relating to the reasonable care required to preserve and protect a dissenter's interest under chapter 496A. Expert opinion was also allowed as to when Carter and John had differing interests, when a conflict of interest arose, and what obligations an attorney has under the disciplinary rules.

 Although a witness generally should not be permitted to give their opinions on questions of domestic law, *Miller v. Bonar*, 337 N.W.2d 523, 529 (Iowa 1983), this rule does not apply where the legal issue is raised in such a manner that it becomes an operative fact to be proven within the case. *United Cent. Bank v. Kruse*, 439 N.W.2d 849, 852 (Iowa 1989). In the context of a legal malpractice action, whether a lawyer's as-

sessment of a legal proposition is correct may be an issue of fact. *Id.; see also Hariri v. Morse Rubber Prods. Co.*, 465 N.W.2d 546, 549 (Iowa App.1990).

We need not decide if the trial court abused its discretion in admitting expert opinion because Riley has not challenged the sufficiency of the evidence of Peter's negligence on appeal. The admission of this testimony on the issue of negligence was not prejudicial to his appeal.

### B. Exclusion of Evidence.

[19] The court excluded Riley's offer of evidence of a separate lawsuit commenced by a bank alleging the fraudulent transfer of assets by Carter. Peter explained to the court this evidence was offered as proof that Carter was attempting to make himself judgment proof so that he would not be required to pay the contingent fee owed to Riley upon settlement of the case. The court considered the evidence irrelevant and we find no abuse in the court's discretion in excluding the evidence.

### C. Tom Riley Memo.

■ Certain exhibits were admitted during the trial that were made by Tom Riley, an attorney in the Riley law firm. At the time they were offered, Tom Riley was a named defendant. They were admissible to show Tom Riley's involvement in providing legal representation to Carter. After all the evidence was in, the trial court dismissed the claim against him. There was no prejudice to Peter or the Riley law firm by reason of the admission of this evidence.

### D. Reference to Insurance.

■ At Riley's request the court granted a pretrial motion in limine prohibiting witnesses from making any reference to insurance. At trial an expert witness called by Carter explained situations where an attorney could have a conflict of interest. He used as an example a situation where one lawyer represented two claimants in an automobile case involving the same defendant and insurance company. Riley's motion for mistrial was denied. We find no abuse of discretion in the court's denial of a mistrial

or new trial because the reference to insurance was made as a part of an explanation of a conflict-of-interest problem. Its admission was not prejudicial error.

### E. Closing Argument.

■ In closing argument Carter's attorney made reference to the emotional stress sustained by his client and asked the jury to punish Riley with their verdict. There were no claims for punitive damages or emotional distress submitted to the jury. Counsel for the defendant objected to this argument and the trial court promptly admonished the jury to disregard the comment about human suffering. The court did not abuse its discretion in its denial of the motion for mistrial.

### VI. *Counterclaim for Attorney Fees.*

■ Following trial the court entered a judgment for Riley upon the counterclaim verdict of $86,000. Carter's posttrial motion for a judgment consistent with the special findings or alternative motion for a judgment notwithstanding the verdict was granted over Riley's resistance to the motion. The trial court found there was inconsistency and irreconcilable conflict between the verdicts. The court set aside the counterclaim verdict and entered a verdict consistent with the verdict for Carter and against Riley.

Carter's malpractice action was submitted under Iowa Code chapter 668 "Liability and Tort—Comparative Fault." Riley's counterclaim was submitted as an action on a written contract. "Special interrogatories under Iowa Code chapter 668 shall be treated as special verdicts for the purposes of these rules." Iowa R. Civ. P. 205. In any case where the jury renders a general verdict, the court may submit interrogatories. Iowa R. Civ. P. 206. If the interrogatories and verdict are harmonious, the court shall order the appropriate judgment. *Id.* If the answer to the interrogatories are consistent with each other but inconsistent with the general verdict, the court may order judgment appropriate to the answers notwithstanding the verdict. *Id.*

Riley urges that no interrogatories were submitted with the general verdict under

rule 206 and that the jury returned a special verdict on the plaintiff's claim under rule 205. The verdict on the counterclaim was a general verdict without interrogatories. As a consequence, Riley argues the option for curing inconsistencies as contemplated by rule 206 is not applicable. Riley further claims there is no inconsistency between a special verdict for Carter and a general verdict for Riley. Because Carter benefitted from Peter's legal services, Riley suggests the jury's award for a portion of his fees can be reconciled with the jury's finding that Peter was negligent.

■ We agree the jury's verdict for Carter is a special verdict and the verdict for Riley is a general verdict. In this case the contract establishing the attorney-client relationship was the contract providing for the payment of a contingent attorney fee in the event of recovery. The legal services were not severable.

When construing rules 205 and 206, we have said rule 206 "should be construed as in pari materia with rule 205." *Ipsen v. Ruess*, 241 Iowa 730, 736, 41 N.W.2d 658, 663 (1950). We defined *in pari materia* to mean taken together as if they were one law and in having one objective in view; to be construed together as though they constituted one act. *Fitzgerald v. State*, 220 Iowa 547, 553, 260 N.W. 681, 683 (1935). Rules 205 and 206 should be construed together because they deal with the same subject matter.

Riley was required to prove it had performed what the contract required. Carter was required to prove Riley was negligent in providing the legal services relating to his claim.

■ Generally an attorney may not recover for services rendered to parties having opposing or adverse interests growing out of the same transaction unless the attorney acted with the consent of both parties. 7 Am.Jur.2d *Attorneys at Law* § 280, at 294 (1997). We have recognized

> an attorney is not permitted to represent adverse interests growing out of the same transaction and where he does so he cannot recover for his services unless he acted with the consent of the parties after a full disclosure of the facts.

*In re Estate of Rorem*, 245 Iowa 1125, 1140, 66 N.W.2d 292, 301 (1954). Likewise, an attorney should not be permitted to recover fees for legal services performed negligently that cause substantial damage to the client.

Here the general verdict on the counterclaim is both inconsistent and in irreconcilable conflict with the answer to interrogatories contained in the special verdict on Carter's claim. If Peter was negligent in performing legal services and his fault was a substantial percentage of fault causing damages, then Peter substantially failed to perform the contracted services. This is not a case like *Ryan v. Kanne*, 170 N.W.2d 395, 400 (Iowa 1969), where an accountant was entitled to a fee for services performed although "minor errors or inconsistencies" were involved.

■ Where the answers in the special verdict are consistent with each other but inconsistent with the general verdict on the counterclaim, the court has three alternatives. *Dutcher v. Lewis*, 221 N.W.2d 755, 762 (Iowa 1974). The trial court can order judgment appropriate to the answers; order a new trial; or send the jury back for further deliberations. *Id.* In our review of this record we find the trial court did not abuse its discretion in electing to order judgment for Carter on the counterclaim.

### VII. *Disposition.*

This suit was prosecuted in the name of the real party in interest. Although there were facts and inferences to the contrary, there was substantial evidence to support the submission of the negligence claims to the jury and substantial evidence to support the jury award of damages. The motion for a new trial was properly denied. The court did not err in setting aside the verdict and judgment on the counterclaim. Finding no reversible error, we affirm.

**AFFIRMED.**