# IN THE COURT OF APPEALS OF IOWA

No. 14-0734
Filed April 22, 2015

**KIMBERLY ANN SALLEE, Individually and
as Next Friend of LUCAS GREGORY DURKOP,
MARIA CHRISTINA RIVERA, and MATTHEW JAMES SALLEE;
and JAMES ALLAN SALLEE,**
     Plaintiffs-Appellants,

**vs.**

**MATTHEW R. STEWART and DIANA STEWART,
d/b/a STEWARTLAND HOLSTEINS,**
     Defendants-Appellees.
_____

Appeal from the Iowa District Court for Fayette County, John J. Bauercamper, Judge.

Kimberly Ann Sallee appeals from an adverse jury verdict asserting the district court erred in several respects. **AFFIRMED.**

D. Raymond Walton of Beecher Law Offices, Waterloo, for appellants.

Karla J. Shea of McCoy, Riley & Shea, P.L.C., Waterloo, for appellees.

Heard by Vaitheswaran, P.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

Kimberly Ann Sallee[1] appeals from an adverse jury verdict. She asserts the district court erred in failing to direct a verdict on the issue of the defendants' negligence in her favor or grant her motion for judgment notwithstanding the verdict. She also asserts the court made instructional errors. Finally she asserts the district court erred in denying her motion for new trial. We affirm.

*I.*      *Background Facts and Proceedings*

While accompanying kindergarten students on a field trip to a dairy farm, chaperone Kimberly Ann Sallee was injured when she fell through a hole in the floor of a hayloft. Sallee filed a negligence suit against the dairy farm's owners, Matthew and Diana Stewart. The Iowa Supreme Court's opinion, on further review of the district court's summary judgment ruling, sets forth the factual background of this case as follows:

> Matthew and Diana Stewart own a dairy farm in Fayette County. Although the Stewarts do not routinely open their farm to the public, classes or individuals wishing to view the farm can schedule a visit. These groups are always accompanied by a member of the Stewart family. If visitors arrive at the farm without a scheduled appointment, they are only permitted to tour the farm if accompanied by the Stewarts.
> The kindergarteners from the Sacred Heart School have been annual visitors for a number of years. During their visit, the students learn about the typical day on a farm. The students are usually chaperoned by their teacher, a few parents, and at least one member of the Stewart family. The Stewarts do not permit the students to go into cattle pens or other places where the Stewarts believe the students might be in danger.
> On May 18, 2010, Sallee accompanied her daughter's Sacred Heart kindergarten class on a tour of the Stewarts' farm. As with other visits to the farm, the field trip was scheduled in advance. The Stewarts accompanied the students during their visit and set

---

[1] Sallee filed this suit for damages on behalf of herself, her children, and her husband. We refer to the plaintiffs collectively as Sallee.

up three stations for the students. At one station, the students rode a horse in a round pen. At another, the students could feed a calf with a bottle of milk. At the third station, the students could view a tractor. Matthew supervised the entire process, and adults were positioned at each station. Once they had rotated through each station, the students saw several cows and a bull. The Stewarts then guided the group to the barn to allow the students to play in the hayloft.

Matthew asked Sallee and another chaperone to climb into the hayloft ahead of the students so that they could assist the students at the top of the ladder. After Sallee looked at the ladder, Matthew reassured her it was stable enough to support her weight. Sallee followed the other chaperone up the ladder and into the hayloft. The children, another chaperone, the teacher, and Matthew followed. Matthew advised Sallee to keep the students away from the hole in the floor where the ladder was located and warned the students not to climb too high on the bales of hay piled to one side of the loft. While in the hayloft, the children ran around and climbed on the hay bales.

The Stewarts never advised Sallee as to the presence of several hay drops, rectangular holes in the floor of the hayloft through which hay can be thrown to the animals below. Ordinarily, the Stewarts stack bales of hay across the holes when they are not in use to insulate the lower part of the barn. Prior to the class's arrival, Matthew inspected the hayloft and stood on the bales of hay covering the holes to make sure they would support his weight. However, while Sallee was standing on top of a bale covering one of the holes, the bale gave way. Sallee fell through the hole, breaking her wrist and leg.

*Sallee v. Stewart*, 827 N.W.2d 128, 131-32 (Iowa 2013) (footnote omitted) (vacating *Sallee v. Stewart*, No. 11-0892, 2012 WL 652039 (Iowa Ct. App. Feb. 29, 2012)).

Sallee filed suit against the Stewarts, alleging their negligence caused her injuries. *Sallee*, 827 N.W.2d at 132. As an affirmative defense, the Stewarts asserted Iowa Code chapter 461C (2009), Iowa's recreational use statute, shielded them from liability. *Id.* The Stewarts subsequently filed a motion for summary judgment based on the recreational use statute. *Id.* Determining Sallee to be a "recreational user," the district court concluded the recreational

use statute barred her claim. *Id.* Sallee's appeal was transferred to this court, where a majority agreed with the district court and affirmed its summary judgment ruling on this issue.[2] *Sallee*, 2012 WL 652039 at *11. Dissenting in part, one judge disagreed on this issue, concluding Sallee was present as a chaperone and not for any recreational purpose, and therefore chapter 461C did not apply. *Id.* at *13.

On further review, the supreme court concluded, "[T]he activities which occurred in the hayloft do not constitute recreational uses under the Iowa statute. . . . As a result, the district court erred in granting summary judgment for the defendants based on the limited immunity provided in Iowa's recreational use statute." *Sallee*, 827 N.W.2d. at 153. The court remanded the case to the district court for trial.[3] *Id.* at 154.

A jury trial took place in February 2014. The district court denied Sallee's motion for directed verdict on the Stewarts' liability made at the conclusion of her case-in-chief and also at the close of all the evidence. The jury found the Stewarts not at fault and returned a verdict in their favor. The district court denied Sallee's motions for judgment notwithstanding the verdict and for new trial. Sallee now appeals.

---

[2] As to Sallee's tour guide liability claims, this court reversed the district court's grant of summary judgment. *Sallee*, 2012 WL 652039 at *11. The panel was unanimous on this issue. *Id.* at *13.

[3] We note the legislature amended chapter 461C after the supreme court's ruling was issued in *Sallee*. *See* 2013 Iowa Acts ch. 128.

## II.   *Motions for Directed Verdict and Judgment Notwithstanding the Verdict*

Sallee alleged the Stewarts were negligent in failing to: (1) properly inspect the hayloft prior to the field trip; (2) safely cover or shield the hay chute opening so that visitors would not fall through it; (3) warn Sallee of the existence and location of the hay chute opening; and (4) direct Sallee away from the hay chute opening.  Sallee contends the district court erred in failing to direct a verdict in her favor on the issue of the Stewarts' negligence and in denying her motion for judgment notwithstanding the verdict (JNOV).  She argues there was no evidence showing that Stewarts were not negligent or that their negligence was not the cause of her injuries.

We review a district court's denial of a motion for directed verdict or JNOV for correction of errors at law.  Iowa R. App. P. 6.907.  In addressing the denial of a directed verdict, we review the facts in the light most favorable to the party against whom the motion was made.  Iowa R. App. P. 6.904(3)(b); *Dorshkind v. Oak Park Place of Dubuque II, L.L.C.*, 835 N.W.2d 293, 296 (Iowa 2013). Because Sallee made the motion for directed verdict, we review the facts in the light most favorable to the Stewarts.  Our review also takes into consideration all reasonable inferences that could fairly be made by the jury, regardless of whether the evidence is contradicted.  *Dorshkind*, 835 N.W.2d at 300.  "Every legitimate inference that reasonably may be adduced from the evidence must be afforded the nonmoving party; and if reasonable minds can differ as to how the issue should be resolved, a jury question is engendered."  *Henkel v. R & S Bottling Co.*, 323 N.W.2d 185, 187-88 (Iowa 1982).  "Our role on appeal is to

decide 'whether the trial court correctly determined there was sufficient evidence to submit the issue to the jury.'" *Id.* (quoting *Easton v. Howard*, 751 N.W.2d 1, 5 (Iowa 2008)).

A motion for JNOV "is intended to allow the district court to correct any error in denying a motion for directed verdict." *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 687 (Iowa 2010). The motion must stand on the grounds raised in the motion for directed verdict. *Id.* Our role in reviewing a motion for JNOV "is to decide whether there was sufficient evidence to justify submitting the case to the jury when viewing the evidence in the light most favorable to the nonmoving party." *Id.* "In reviewing rulings on a motion for judgment notwithstanding the verdict, we simply ask whether a fact question was generated." *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010). Sallee concedes success of a plaintiff's motion JNOV "has only been achieved in the rarest cases."

Generally questions of fault, contributory fault, and causation are for the jury to decide and only in exceptional cases may they be decided as a matter of law. *See* Iowa R. App. P. 6.904(3)(j); *Crookham v. Riley*, 584 N.W.2d 258, 265 (Iowa 1998). Contrary to Sallee's position, we do not find this to be one of those exceptional cases.

As a part of their field trip, the kindergartners were allowed to play in the hayloft of the Stewarts's barn. The floor of the hayloft had a number of holes, or chutes, through which hay could be dropped to cows in the barn below. When not in use, the chutes were covered. Matthew testified he inspected the hayloft the day the kindergarteners visited the farm before they arrived. As a part of his

inspection, he stood on the bales of hay covering the chute Sallee later fell through to determine if the bales were sturdy and solid enough to support someone's weight. This chute was located near the entrance to the hayloft. Matthew further testified he "gave specific instructions" to Sallee and Amy Posey, the chaperones helping the children in the hayloft. In particular, Matthew testified he "told [Sallee] exactly where to stand," and he "didn't expect she would disobey." Matthew explained "[f]alling and safety was on [his] mind" and that is why he instructed the chaperones to keep the children in the middle of the hayloft—away from the hay chutes. There were no chutes in the middle of the hayloft where the children were directed to play. He testified he told Sallee, "I want you to stay here with the children in the middle of the hayloft."

Sallee testified Matthew cautioned her to keep the kids "back from the doorway so . . . nobody got hurt." Matthew did not mention the location of the hay chutes covered with hay bales. Sallee understood she was to keep the kids away from the doorway and in the middle of the hay loft.

In applying the above-mentioned principles and in reviewing the evidence in a light most favorable to the Stewarts, we conclude there was sufficient evidence to create a jury question on the issue of negligence. Accordingly, we affirm on this issue.

### III.    *Comparative Fault Instruction*

Sallee claims the district court "erred in instructing the jury with regard to the comparative negligence[4] of [Sallee] and/or her unreasonable failure to avoid

---

[4] At trial, the district court specified it was instructing the jury on "comparative fault"—not "comparative negligence."

injury." Specifically, Sallee takes issue with the following jury instructions issued by the court:

> UNREASONABLE FAILURE TO AVOID INJURY – DEFINED:
> A party is required to exercise reasonable care for their own safety. This means that, if, in the exercise of ordinary care under the circumstances, a party could have taken some particular action after an action of fault of another party, in order to avoid an injury, then they are under a duty to take such action.

The jury was further instructed:

> COMPARATIVE FAULT DEFENSE
> The defendants claim that the plaintiff, Kimberly Ann Sallee, was at fault in failing to exercise reasonable care for her own safety. This ground of fault has been explained to you in other instructions.
> The defendants must prove both of these propositions:
> 1. The plaintiff Kimberly Ann Sallee unreasonably failed to take action to avoid an injury in one or both of these ways:
> [a] She entered the hayloft and failed to be aware of and take action to protect herself against potential dangers in a hayloft in light of what she knew or should have known; or
> [b] She disregarded Matthew R. Stewart's instructions regarding where to walk and stand in the hayloft.
> 2. The fault of the plaintiff, Kimberly Ann Sallee, was a cause of the damages claimed by all of the plaintiffs.
> If the defendants have failed to prove either of these propositions, the defendants have not proved their defense. If the defendants have proved both of these propositions, then you will assign a percentage of fault against the plaintiff and include the plaintiff's fault in the total percentage of fault found by you in answering the verdict questions.

Comparative fault was defined to the jury as follows:

> Damages may be caused by the fault of more than one person. In comparing fault, you should consider all of the surrounding circumstances as shown by the evidence, together with the conduct of the plaintiff, Kimberly Ann Sallee, and the defendants, and the extent of the causal relation between their conduct and the damages claimed. You should then determine what percentage, if any, the fault of the plaintiff, Kimberly Ann Sallee, and the defendants contributed to the damages claimed by the plaintiff, Kimberly Ann Sallee.

Sallee contends these instructions were improper in this case because there was not "a scintilla of evidence to support giving the instructions that embody these theories." According to Sallee, "Allowing the Defendants to argue [Sallee] was responsible for her own injuries, i.e. she should have known that she was too overweight to go into a hayloft, allowed the jury to conclude that the Stewarts were not responsible." We note that the Stewarts never asserted or argued Sallee was too overweight to go into the hayloft, nor did the court submit any instructions to the jury that referred to Sallee's weight or size.

The fact is the jury did not reach the question of comparative fault because it answered "No" to the first question on the verdict form, "Were the [Stewarts] at fault?" Accordingly, because the jury did not reach the issue of comparative fault, Sallee was not prejudiced by the instructions relating to comparative fault. *See Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 157 (Iowa 2004) ("[R]eversal is not required unless the plaintiff was prejudiced by this error."); *see also Ladeburg v. Ray*, 508 N.W.2d 694, 696 (Iowa 1993) ("[P]laintiff could not have been prejudiced by the instructions on her comparative fault. This case was submitted to the jury on special interrogatories. The jury found that defendants were not at fault in response to the first question on the verdict form. Consequently, the jury did not answer the interrogatories concerning plaintiff's fault. Therefore, because there could be no prejudice to plaintiff, we need not address her objection to the submission of instructions on her comparative fault.").

In any event, questions of comparative fault are for the jury, and it is only in exceptional cases that they may be decided as a matter of law. *See* Iowa R.

App. P. 6.904(3)(j); *Crookham*, 584 N.W.2d at 265. This is not the exceptional case. Sufficient evidence was presented on the issue of Sallee's fault, including evidence that Matthew Stewart had instructed Sallee to stand in the middle of the hayloft and had told her to keep the children away from the doorway.

We find no error in the district court's submission of the issue of comparative fault to the jury. We therefore affirm on this issue.

## IV. *Medical Plan Payments*

On appeal, Sallee claims the district court "erred in permitting the defendants' counsel to raise and argue the existence of a plan or health insurance covering the medical bills of [Sallee]." Sallee filed a motion in limine to exclude any reference to Medicaid payments. The Stewarts resisted, agreeing the fact that the payor was Medicaid was not admissible, but asserted the payor could be referred to as a "medical insurer" or a "health insurer." At the hearing on the motion in limine Sallee's counsel stated he thought any mention of insurance was prejudicial. The Stewarts' counsel agreed that "we don't want a jury to know that it's Medicaid," but argued she could tell the jury what the payments were and that if those sums were awarded they would be paid back to the party that paid them, and could refer to that party as a "health insurer." Sallee's counsel countered,

> I think if you mention anything about health insurance, it makes it easier for a jury to say, well, you know, she's got her medical payments made by insurers, so, you know, she's not—she's not that bad off, the result may be a lower monetary award. I just think there is too many problems with saying anything about a medical insurer or a health insurer.

After further discussion of the subrogation issue was had between the court and parties' counsel, the court stated the parties had plenty of time to think about how the subrogation instruction would be worded, and the court denied Sallee's motion in limine.

In making her argument on appeal, Sallee points to a statement made during opening statements by counsel for the Stewarts. During her opening statement, counsel for the Stewarts stated:

> You're going to hear some testimony that the $38,000 was paid that took care of the damages, always happens, the doctor bills some really high amount, the health insurer pays some lower amount, and the rest is written off. So $38,000 is the amount that if you award it in this action, has to be repaid. It's just like any other health insurance that they pay for you. So there is $38,000 in past medicals.

Sallee did not object.[5] Under our error preservation rules Sallee had an obligation to raise an objection or make a motion for mistrial "at the earliest opportunity in the progress of the case." *See State v. Milner*, 571 N.W.2d 7, 12 (Iowa 1997); *Carter v. Wiese Corp.*, 360 N.W.2d 122, 129 (Iowa Ct. App. 1984) (error properly preserved by making a motion for mistrial immediately after reference to insurance occurred); *Randa v. U.S. Homes, Inc.*, 325 N.W.2d 905, 909 (Iowa Ct. App. 1982) (waiting until the close of evidence to make motion for directed verdict did not preserve error concerning the introduction of allegedly objectionable evidence); *see also* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55

---

[5] During her closing statement the Stewarts' counsel did not mention or argue that Sallee was covered by medical insurance or a health plan. She merely stated: "Past medical expense that were paid are $36,566.74, and the instructions make it very clear that those have to be paid back if and only if they are awarded in this action; otherwise, they do not have to be paid back."

Drake L. Rev. 39, 64 (2006) ("[A] party claiming opposing counsel has committed misconduct, or improperly introduced evidence concerning insurance coverage . . . should move immediately for mistrial."). Sallee failed to immediately object to counsel's opening statement comment, nor did she bring the issue to the court's attention at the conclusion of the opening statement. And although it would have been too late to do so, Sallee failed to raise the issue during the motions made at the conclusion of the plaintiff's case-in-chief. Although it would have been too late to do so, Sallee did not raise the issue during motions made at the close of evidence. Waiting to raise the issue concerning the mention of allegedly objectionable evidence until making a motion for new trial did not preserve error on this issue for our review.

The parties' counsel did have an agreement that the amount billed and the amount paid would be stipulated. Sallee's trial exhibit 18, a compilation of Sallee's medical bills, shows the amounts billed and the amounts paid. Payors of the amounts paid are not reflected on the exhibit. The fact that a portion of Sallee's medical bills were paid by Medicaid was not mentioned at trial, either through testimony or by exhibit.

Sallee objected to the court submitting the following instruction to the jury:

MEDICAL EXPENSES PAID
$36,566.74 of plaintiff Kimberly Ann Sallee's past medical expenses claimed as damages were paid by her medical plan, and the medical plan is "subrogated" to the plaintiff's recovery, if any, from the defendants in this case. The "subrogation" provisions of the medical plan require the plaintiff to repay these past medical payments to the medical plan out of any damages you may award to her for past medical expenses in this case. However, Kimberly Ann Sallee is not required to reimburse her medical plan in any amount over and above her past medical expense verdict award in this lawsuit.

The existence of the medical plan payments should not cause you to find either for or against the plaintiff, nor should it cause you to either increase or reduce any amount of damages you may award to the plaintiff. There are questions on the verdict form for you to answer if you award damages to the plaintiff.

Sallee's counsel argued the instruction should not be given "for the reasons that it references subrogation, medical plan, which we think the jury will likely interpret it as insurance, and we do not believe that that's appropriate to give under the law or evidence of this case." In discussing the instruction, he further stated, "And I have no objections if the court wants to change the instructions such that the court can include in there that the difference between what was billed and what was paid was written off, and that what has been paid will have to be paid back." On appeal, Sallee contends the jury should not have been instructed that her medical bills were paid by a "medical plan."

The jury did not reach the issue of damages, so Sallee was not prejudiced by the challenged instruction. *See Pexa*, 686 N.W.2d at 157; *see also Gore v. Smith*, 464 N.W.2d 865, 868 (Iowa 1991) (holding any alleged error in a damage instruction could not have prejudiced the plaintiff because the plaintiff had failed to establish the liability of the defendants). We therefore affirm on this issue.

## V.   *Negligent Misrepresentation Instruction*

Sallee contends the district court "erred in failing to submit to the jury [her proposed] instruction on the defendants' negligent misrepresentations resulting in physical injury and their negligent performance of a gratuitous undertaking."[6] "[W]e review a claim that a district court should have given a party's requested

---

[6] We note that at the conclusion of Sallee's case-in-chief the district court granted Stewarts's motion for a directed verdict on Sallee's negligent misrepresentation theory.

instruction for an abuse of discretion." *Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 719 (Iowa 2014). There are several flaws to Sallee's claim.

The Restatement (Second) of Torts defines negligent misrepresentation, in pertinent part, as follows:

> One who, in the course of his business, profession, or other employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552, at 126-27 (1977).

As the Iowa Supreme Court has reiterated, "only those who are in the business of supplying information to others can be liable for negligent misrepresentation." *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 111 (Iowa 2012) (citation and internal quotation marks omitted); *see also Freeman v. Ernst & Young*, 516 N.W.2d 835, 838 (Iowa 1994). Sallee does not claim the Stewarts were in the business of providing information to others.

Instead, Sallee asks us to address her claim under section 311 of the Restatement (Second) of Torts, which provides:

> (1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results
> (a) to the other, or
> (b) to such third persons as the actor should expect to be put in peril by the action taken.
> (2) Such negligence may consist of failure to exercise reasonable care
> (a) in ascertaining the accuracy of the information, or
> (b) in the manner in which it is communicated.

Restatement (Second) of Torts § 311, at 106.  This section has been mentioned in only a few Iowa cases.  Its use as a basis for liability was approved by the Iowa Supreme Court in *Freese v. Lemmon*, 210 N.W.2d 576, 580 (Iowa 1973), but the *Freese* court's application of it as a basis for liability against a physician was overruled in *Schmidt v. Mahoney*, 659 N.W.2d 552, ____ (Iowa  2003).   And although it does not appear section 311 has been rejected as a basis for liability in Iowa, *see Kolbe v. State*, 661 N.W.2d 142, 148 (Iowa 2003), we find no abuse of discretion in the district court's refusal to instruct the jury on the theory in this case because Sallee failed to show any representations by the Stewarts were proved to be "false information."

In this regard, Sallee claims that she, while attending a tour of the Stewarts's farm, could reasonably "believe the farm, including the hayloft, would be safe for them and rely on this implied representation by the Stewarts which proved to be false."  Sallee also points to Matthew Stewart's statement to her regarding the stability of the ladder, and claims his assurance that the ladder would hold her "expressly guarantee[d] the safety of the hayloft itself."  In other words, although Sallee does not cite any false information provided to her by the Stewarts, she asks us to infer from the fact that they did not stop her from going into the hayloft that it was safe for her to do so.  We decline Sallee's invitation.

"[A] court is required to give a requested instruction when it states a correct rule of law *having application to the facts of the case* and when the concept is not otherwise embodied in other instructions."  *Summy v. City of Des Moines*, 708 N.W.2d 333, 340 (Iowa 2006) (quotation marks and citation omitted).  Because the Stewarts did not provide false information to Sallee, the

district court was within its discretion to decline to instruct the jury on negligent misrepresentation. We affirm on this issue.

## VI. Tour Guide Liability Instruction

Sallee also takes issue with the district court's failure to instruct the jury on the theory of "tour guide" liability. The Sallee's proposed instruction on the tour guide liability theory provides, in part:

> 3. The Stewarts were negligent in the performance of their duties as tour guides in the following particulars:
> a. Failing to properly inspect the hayloft where Kimberly fell through to determine its unsafe condition, or
> b. Failing to properly cover the hole that Kimberly fell through, or
> c. Failing to properly fence off the area where the hole existed, or
> d. Failing to warn her of the hole's existence, or
> e. Failing to direct her away from the hole . . . .

The court acknowledged Sallee's request for such an instruction, but declined to give the instruction, explaining:

> [T]he additional theory of fault requested by the plaintiff on negligent performance of an undertaking, previously referred to by counsel as the tour guide theory, is essentially a duplication of plaintiff's fault claim, relying on the same basic duties and the same breaches of those duties and the same specifications of negligence, and it would be confusing to the jury and not helpful or necessary for the submission of the plaintiff's claim.

The court's marshalling instruction provided, in part:

> 3. The defendants were at fault due to negligence in one or more of the following particulars:
> a. failing to properly inspect the hayloft prior to the field trip;
> b. failing to safely cover or shield the hay chute opening so that visitors would not fall through it;
> c. failing to warn Kimberly Ann Sallee of the existence and location of the hay chute opening.
> d. failing to direct Kimberly Ann Sallee away from the hay chute opening.

Sallee's tour-guide-liability instruction virtually mirrors the court's marshalling instruction.

"If the concept behind the requested instruction is embodied in other instructions, the district court may properly reject the proposed instruction." *Crawford v. Yotty*, 828 N.W.2d 295, 298 (Iowa 2013) (citation and internal quotation marks omitted). Because Sallee's requested instruction was "embodied in other instructions" submitted to the jury, the district court did not abuse its discretion in declining to instruct the jury on tour guide liability. *See id.*; *see also Summy*, 708 N.W.2d at 340. We affirm on this issue.

### VII.    Motion for New Trial

Sallee asks this court to grant her a new trial "on the basis of all [the] grounds" raised in her appellate brief. Having decided all of those issues against Sallee, we conclude the district court properly denied Sallee's motion for new trial. We affirm on this issue.

### VIII.    Conclusion

Upon our review of all the issues raised by Sallee on appeal, we affirm the district court's order denying her motions for directed verdict, for judgment notwithstanding the verdict, and for new trial.

**AFFIRMED.**